# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS

**Carlos Hernandez**                                                                                    **Plaintiff**

**v.**                              **No. 4:13CV00593 SWW/JTR**

**Carolyn W. Colvin, Acting Commissioner,**
**Social Security Administration**                                                                      **Defendant**

## Recommended Disposition

### Instructions

The following recommended disposition was prepared for U.S. District Judge Susan W. Wright. A party to this dispute may file written objections to this recommendation. An objection must be specific and state the factual and/or legal basis for the objection. An objection to a factual finding must identify the finding and the evidence supporting the objection. Objections must be filed with the clerk of the court no later than 14 days from the date of this recommendation.[1] The objecting party must serve the opposing party with a copy of an objection. Failing to object within 14 days waives the right to appeal questions of fact.[2] If no objections are filed, Judge Wright may adopt the recommended disposition without independently reviewing all of the record evidence.

---

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives right to de novo review and to appeal magistrate judge's findings of fact).

## **Reasoning for Recommended Disposition**

Carlos Hernandez seeks judicial review of the denial of his application for disability benefits.[3] Hernandez worked as a plumbing journeyman from 1990 until July 2006 when he had a heart attack.[4] In February 2011, he applied for disability benefits and alleged disability beginning July 2009.[5] He based his claim on cardiovascular disorder and congestive heart failure.[6]

**The Commissioner's decision**. After considering the application, the Commissioner's ALJ determined Hernandez has severe impairments — coronary artery disease and hypertension[7] — but he can do some light work that permits sitting and standing.[8] The ALJ denied the application because a vocational expert identified available work for a person with Hernandez's impairments.[9]

---

[3]SSA record at pp. 109 & 113.

[4]*Id*. at pp. 151 & 159-62.

[5]The agency papers suggest the onset date flows from the denial of a prior application. *See id*. at p. 125 (reflecting application history).

[6]*Id*. at p. 150.

[7]*Id*. at p. 15.

[8]*Id*. at p. 16.

[9]*Id*. at pp. 21 & 39-41.

After the Appeals Council declined to review,[10] the ALJ's decision became the Commissioner's final decision for the purpose of judicial review.[11] Hernandez filed this case to challenge the decision.[12]  In reviewing the decision, the court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[13]  This recommendation explains why substantial evidence supports the decision and why the ALJ made no legal error.

**Hernandez's allegations**.  Hernandez complains about the consideration of noncompliance with treatment recommendations; according to Hernandez, the ALJ should have considered the lack of transportation.  He contends a sit/stand option is incompatible with light work.  For these reasons, he maintains substantial evidence

---

[10]*Id*. at p. 1.

[11]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[12]Docket entry # 1.

[13]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

does not support the ALJ's decision.[14]

**Applicable legal principles**. For substantial evidence to support the decision, a reasonable mind must accept the evidence as adequate to show Hernandez do some light work.[15] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."[16] The ALJ placed the following limitations on light work: (1) occasional stair climbing, balancing, stooping, kneeling, crouching, and crawling; (2) no ladder climbing; (3) avoid extreme heat, work hazards and unprotected heights; and (4) need for a sit/stand option.[17] The court must determine whether Hernandez can work with these limitations.

**Whether substantial evidence exists**. Hernandez's medical history includes diagnoses of coronary artery disease and congestive heart failure, and a history of thrombus[18] — a clot in the system that circulates blood throughout the body.[19] After

---

[14] Docket entry # 11.

[15] *See Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990) ("Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (internal citation omitted).

[16] C.F.R. §§ 404.1567(b) & 416.967(b).

[17] SSA record at p. 16.

[18] *Id*. at p. 207.

[19] Laith Farid Gulli, 6 The Gale Encyclopedia of Med. 4574 (4th ed.).

his heart attack, Hernandez's treatment included the anticoagulant drug warfarin to prevent clots.[20] Treatment records reflect target-range blood-clotting levels when Hernandez took warfarin as prescribed.[21]

After the heart attack, Hernandez's heart condition improved. In a healthy heart, the amount of blood flowing out of the left ventricle is greater than 50%; in people with congestive heart failure, it's less than 50%.[22] In August 2008, the blood flowing out of Hernandez's left ventricle was 45%.[23] With treatment, blood flow increased to 55% by January 2011.[24] The increase is significant because it shows Hernandez's heart condition can be controlled by treatment. "An impairment which

---

[20] Nancy Ross-Flanigan & Tish Davidson, 1 The Gale Encyclopedia of Med. 334 (4th ed.) (explaining that an anticoagulant drug reduces the ability of the blood to form clots, and in turn, reduces the risk of a stroke or another heart attack after a first heart attack).

[21] SSA record at p. 205 (in range on July 31, 2008, no missed doses); p. 198 (below range on Sept. 9, 2008, no warfarin for three days); p. 216 (in range on Nov. 18, 2008, one missed dose during prior week); p. 217 (within range on Mar. 3, 2009, no warfarin for four days last week); p. 225 (within range on Apr. 23, 2009, no missed doses); p. 226 (below range on July 7, 2009, one missed dose reported); p. 227 (above range on Oct. 5, 2009, one missed dose); p. 228 (above range on Feb. 17, 2010, missed couple of doses two or three weeks ago).

[22] Tish Davidson & Laura Jean Cataldo, 2 The Gale Encyclopedia of Med. 1143 (4th ed.).

[23] SSA record at p. 203.

[24] *Id.* at p. 247.

can be controlled by treatment or medication is not considered disabling."[25] The increase is probative of Hernandez's credibility because it shows congestive heart failure resolved five weeks before Hernandez applied for benefits.

At some point, Hernandez stopped taking warfarin as prescribed.[26] In March 2011, the blood flow from the left ventricle decreased to 46%.[27] Despite the decrease, Hernandez's exercise stress test was normal.[28] A normal exercise stress test " shows normal electrocardiogram tracings and heart rate, blood pressure within the normal range, and no angina [chest pain], unusual dizziness, or shortness of breath."[29] The normal exercise stress test undermines Hernandez's claim of disabling chest pain, shortness of breath, and dizziness.[30]

Hernandez maintains the ALJ should have considered the lack of transportation

---

[25] *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

[26] SSA record at p. 231 (stating on Dec 16, 2010, that Hernandez was discharged from coumadin clinic for noncompliance) & p. 285 (reporting medication for high blood pressure and high cholesterol, but no warfarin, on Feb. 27, 2011.

[27] *Id*. at p. 260.

[28] *Id*. at p. 264.

[29] Barbara Wexler, Lee A. Shratter & Brenda W. Lerner, 5 The Gale Encyclopedia of Med. 4172 (4th ed.).

[30] *Compare* SSA record at p. 167 (complaining about chest pain, shortness of breath, and dizziness on Mar. 19, 2011), *with*, *id*. at p. 264 (normal exercise stress test on Mar. 9, 2011).

as a reason for noncompliance, but there's no indication the ALJ didn't consider transportation. The distance between Hernandez's place of residence (North Little Rock) and the location of his medical provider (Little Rock) poses no unsurmountable challenge. Hernandez last sought treatment for his heart condition in December 2010. He presented for followup testing.

After reviewing treatment records, medical experts opined that Hernandez can do light work with occasional climbing, balancing, stooping, kneeling, crouching, and crawling, but no work hazards.[31] A reasonable mind would accept the opinion evidence as adequate to support the ALJ's determination because the ALJ adopted the limitations and added other limitations.[32]

**Vocational evidence**. The ALJ asked a vocational expert about available light work for a person with Hernandez's limitations.[33] The vocational expert identified cashier II, but stated that a sit/stand option reduces available work by 60%.[34] Hernandez maintains a sit/stand option is incompatible with light work, but the purpose of a vocational expert is to "to assess whether jobs exist for a person with the

---

[31]*Id*. at pp. 271-75 & 282.

[32]The ALJ added no climbing ladders and no exposure to heat.

[33]*Id*. at pp. 39-41.

[34]*Id*.

claimant's precise disabilities."[35] The vocational expert explained that his testimony about the ability to work as a cashier was based on the Dictionary of Occupational Titles, and the availability of work for cashiers with a sit/stand option was based on professional experience. Hernandez does not challenge the expert's qualifications. The ALJ properly relied on the vocational expert's testimony. As reasonable mind would accept the vocational evidence as adequate to show work exists that Hernandez can do regardless of whether such work exists where he lives, whether a job vacancy exists, or whether he would be hired if he applied for work.[36]

Even if a sit/stand option is incompatible with light work, incompatibility does not prevent Hernandez from doing sedentary work. He reported no limitations in with tasks required by sedentary work.[37] Hernandez has sought only plumbing work, the heavy work he can no longer do; he has not applied for other work.

**Conclusion**. Substantial evidence supports the ALJ's decision. The ALJ made no legal error. For these reasons, the undersigned magistrate judge recommends denying Hernandez's request for relief (docket entry # 2) and affirming the Commissioner's decision.

---

[35]*Gilliam v. Califano*, 620 F.2d 691, 694 n.1 (8th Cir. 1980).

[36]42 U.S.C. § 1382c(a)(3)(B) (defining disability under social security law).

[37]SSA record at p. 174.

It is so ordered this 17th day of September, 2014.

_____
United States Magistrate Judge